J-S27045-16

2016 PA Super 109

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JORDAN ELIAS KORN, | |
| Appellee | No. 1528 MDA 2015 |

Appeal from the Order Entered August 18, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000427-2015

BEFORE: SHOGAN, J., DUBOW, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED MAY 25, 2016**

The Commonwealth appeals from the order entered in the Court of Common Pleas of Centre County granting the suppression motion filed by Appellee, Jordan Elias Korn. After careful review, we reverse and remand for further proceedings.

On February 26, 2015, Appellee was arrested and charged with simple possession and possession with intent to deliver a controlled substance.[1] On May 22, 2015, Appellee filed a motion to suppress physical evidence obtained from the search of his bedroom in Apartment 201, located at The Phoenix Apartment Complex, in State College Boro, Centre County.

---

[1] 35 P.S. § 780-113(a)(30) and 35 P.S. § 780-113(a)(16), respectively.

*Former Justice specially assigned to the Superior Court.

A suppression hearing commenced on July 13, 2015, at which the Commonwealth presented the sole witness, Trooper Eric Guido of the Pennsylvania State Police. Trooper Guido testified that toward the end of February of 2015, he was conducting an investigation regarding the sale of controlled substances out of an apartment at 501 East Beaver Avenue in State College. N.T., 7/13/15, at 6. According to the trooper, the investigation began after a Confidential Informant advised him that he had purchased Xanax pills from Aaron Murray. *Id.* at 7. Subsequently, Trooper Guido and the Confidential Informant made two controlled buys of Xanax from Mr. Murray, the first of which occurred in Mr. Murray's bedroom in Apartment 201. *Id.* at 8-12.

Based on evidence seized during these drug buys, Trooper Guido applied for a search warrant for the entire apartment. When asked why he would seek to search the entire apartment, when the first drug buy occurred only in a bedroom, Trooper Guido replied:

> A. Because you never know where things could be hidden or secreted. Sometimes people - - many times we do a search warrant, people will say well, I'll just take you to where things are and, you know, [they are] willing to give up a little bit to save a lot. So, you always have to make sure you thoroughly check for everything.

*Id.* at 14.

The description of the property to be searched by the warrant was listed as "The Phoenix Apartment Complex, 501 East Beaver Ave, Apt#201

located in State College Boro, Centre County." ***See id.***; Com. Exhibit 1. According to Trooper Guido, the owner, occupant or possessor of this apartment was listed as "Aaron Murray," because the Confidential Informant told him that Mr. Murray "was the only one that was supposed to be living there." ***Id.*** at 16.

Trooper Guido further testified that the search warrant was executed shortly after it was obtained at approximately 10:55 a.m. on February 26, 2015. N.T., 7/13/15, at 15. The trooper stated that prior to the search, he contacted the building manager who informed him that if no one answered the apartment door, he would send a maintenance person so that the police would not have to break down the door. ***Id.*** at 17. Trooper Guido then stated they entered a side door which led to Apartment 201, and Mr. Murray answered their knock on the door. ***Id.***

Upon entering the apartment, Trooper Guido stayed with Mr. Murray, while two other troopers checked the apartment for other occupants. At that time, Trooper Guido could hear knocking on a door at the end of a hallway and repeated saying, "Come out of the room, state police, we have a search warrant, get out of the room." ***Id.*** at 18. According to the trooper, after about five minutes, Appellee opened the bedroom door, and "wanted to know what was going on." ***Id.*** at 19. When he was advised about the reasons for the troopers' presence, Appellee asked to see a copy of the search warrant, and the troopers complied. ***Id.*** At that time, another

- 3 -

trooper searched Appellee's person and found several Xanax pills. *Id.* at 19-20. Ultimately, both Mr. Murray and Appellee were placed in the living room of the apartment.

Trooper Guido testified that the search of the apartment began in the bedroom that had been occupied by Appellee. According to the trooper, Appellee's bedroom door was not marked in any way to distinguish it from the other bedroom. *Id.* at 21. Trooper Guido did not recall a dead bolt or key lock on the door but testified the door was locked when first approached by the other troopers. N.T., 7/13/15, at 21. Upon searching the bedroom, Trooper Guido noticed a "safety deposit-type box on a desk." *Id.* at 22. After finding a key in a backpack in the room, another officer unlocked the box. *Id.* at 23. Inside the box, the troopers found three vacuum-sealed bags containing approximately 7000-8000 white pills, and approximately $5,000 in cash. *Id.* at 25. Various drug packaging and a scale, as well as a safety deposit key, were also found inside the bedroom. A subsequent search warrant was issued for the corresponding safety deposit box, which was rented by Appellee, and approximately $12,000 in cash was found inside. *Id.* at 28.

Describing the bedroom further, Trooper Guido repeated that he did not recall a dead bolt or key lock, and the bedroom did not have a separate apartment number, mailbox, or entrance. *Id.* at 26. According to the trooper, "[it] was a typical college apartment that [he was] used to

executing search warrants on, common area, two bedrooms, bathroom, kitchen." *Id.*

Upon cross-examination, Trooper Guido conceded that, when speaking with the building manager, he did not ask who resided in Apartment 201. *Id.* at 30. He also testified that, upon entering the apartment to conduct the first controlled buy, he noticed a door at the end of the hallway, but only learned it was a second bedroom that was shared by Appellee and a second roommate when subsequently executing the search warrant. *Id.* at 31. Trooper Guido further acknowledged that he did not know where the mailboxes for any unit within the apartment complex were located. N.T., 7/13/15, at 34. Finally, Trooper Guido testified that prior to the execution of the search warrant he was unaware that Appellee resided in Apartment 201. *Id.*

Based on Trooper Guido's suppression hearing testimony, the trial court granted Appellee's suppression motion:

> This Court finds that Apartment 201 of the Phoenix building contains more than one living unit, as it contains separate living quarters for each of the individuals who reside there. The search warrant in the instant case was obtained in order to investigate Aaron Murray's illegal activities. In fact, the warrant specifically states "The Phoenix Apartment Complex, 501 East Beaver Ave, Apt#201 located in State College Boro, Centre County," with the name of the owner/occupant listed as Aaron Murray." Despite the fact that Apartment 201 contains multiple living units, the warrant fails to describe the particular living unit that was to be searched so as to ensure the other living units, for which no probable cause existed, were not searched. The Court finds that the

> language of the warrant is sufficient to permit a search of Murray's room and any common areas. Magisterial District Justice [sic] [Carmine W.] Prestia had a substantial basis from the warrant application to believe that probable cause existed as it relates to Murray and his activities. However, the search of [Appellee's] room was improper and outside the scope of the probable cause used to obtain the search warrant. The officers had no knowledge of [Appellee's] existence and obtained the warrant solely on the basis of the interactions with Murray in his own room and in a vehicle outside the apartment. Furthermore, at the time the warrant was executed, the door to [Appellee's] room was locked, indicating that Murray could not have exercised dominion or control over the items in [Appellee's] room. As such, [Appellee's] Motion to Quash Search Warrant and Suppress Evidence is GRANTED, and all evidence obtained from [Appellee's] bedroom must be suppressed.

Opinion and Order, 8/18/15, at 4.

The Commonwealth filed a timely appeal. Within its notice of appeal, the Commonwealth certified that the suppression court's order would terminate or substantially handicap the prosecution of Appellee. *See* Pa.R.A.P. 311(d) (permitting Commonwealth appeal from an interlocutory order if it certifies that the order will terminate or substantially handicap the prosecution). On September 30, 2015, the Commonwealth filed its Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On October 1, 2015, the trial court filed an opinion in response, in which the court "respectively maintains that its Opinion and Order of August 18, 2015 was correctly entered, the reasons for which were adequately addressed therein." Opinion, 10/1/15, at 1.

On appeal, the Commonwealth presents the following issue for our review:

1. Did the [trial] court err as a matter of law in granting [Appellee's] Motion to Suppress when the search of [Appellee's] room was constitutionally valid as part of the single-unit residence identified on the search warrant?

Commonwealth's Brief at 4. In support of its claim of error, the Commonwealth further asserts:

In this incident, Trooper Guido had probable cause to search Aaron Murray's bedroom which was developed through two controlled buys. Based on this probable cause, he obtained a search warrant which sufficiently identified the area to be searched. Because [Appellee's] bedroom was part of the single-unit apartment, Trooper Guido was not obligated to obtain a separate warrant or develop probable cause independent of that already established in order to justify searching it.

Commonwealth's Brief at 10. We agree.

Our standard of review in addressing a challenge to the suppression court's granting of a suppression motion is well settled.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

***Commonwealth v. Miller***, 56 A.3d 1276, 1278-1279 (Pa.Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." ***Commonwealth v. Brown***, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

With regard to search warrants, we have explained the following.

> It is well-established that for a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance, and make this determination on facts described within the four corners of the supporting affidavit, and closely related in time to the date of issuance of the warrant. It is equally well established that a reviewing court [must] pay great deference to an issuing authority's determination of probable cause for the issuance of a search warrant. Moreover, our Supreme Court has recognized that affidavits supporting search warrants normally are prepared ..., 'by nonlawyers in the midst and haste of a criminal investigation,' and, accordingly, said affidavits, should be interpreted in a 'common sense and realistic' fashion rather than in a hypertechnical manner.

***Commonwealth v. Griffin***, 24 A.3d 1037, 1043 (Pa.Super. 2011) (brackets, some quotation marks, and citations omitted).

With regard to the particularity requirements of a search warrant application, this Court recently has summarized:

> The Rules of Criminal Procedure include a particularity requirement: "Each search warrant shall be signed by the issuing authority and shall" . . . (c) name or describe with particularity the person or place to be searched."

Pa.R.CrimP. [205]. The Comment to Rule [205] explains: "Paragraphs (b) and (c) are intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." Similarly, the Supreme Court has held a "practical, common-sense" approach should be taken in determining whether the place to be searched is specified with sufficient particularity. *Commonwealth v. Carlisle*, 517 Pa. 36, 534 A.2d 469, 472 (1987).

The Pennsylvania Supreme has concluded Article 1, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment, [*Commonwealth v.*] *Edmunds*, [][526 Pa. 374, 586 A.2d 887 (1991)], including a more demanding particularity requirement; the description must be as particular as reasonably possible. *Commonwealth v. Grossman*, 521 Pa. 290, 555 A.2d 896, 899 (1989). "The twin aims of Article 1, Section 8 are the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause. *Commonwealth v. Waltson*, 555 Pa. 223, 724 A.2d 289, 292 (1998).

> In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described "precise enough to enable the executing officer to ascertain and identify, with reasonable effort the place intended, and where probable cause exists to support the search of area so designated a warrant will not fail for lack of particularity."

*Id.*, at 292 (quoting *In re Search Warrant B-21778*, 341 Pa.Super. 350, 491 A.2d 851, 856 (1985) *aff'd*, 513 Pa. 429, 521 A.2d 422 (1987)).

*Commonwealth v. Irvin*, 2016 Pa.Super. Lexis 77, ___ A.3d ___

(Pa.Super. filed Feb. 8, 2016) (quoting *Commonwealth v. Belenky*, 777

A.2d 483, 485-86 (Pa.Super. 2001)). In short, probable cause exists when, based upon a totality of the circumstances set forth in the affidavit of probable cause, there is a fair probability that evidence of a crime will be found in a particular place. *Commonwealth v. Lyons*, 622 Pa. 91, 79 A.3d 1053 (2013).

Upon careful scrutiny of the uncontradicted facts of record, as well as pertinent legal authority in conducting our *de novo* review, we conclude that the trial court's finding that Appellee's bedroom was a "separate living unit" is supported by neither the evidence presented at the suppression hearing nor applicable case law. Trooper Guido testified without contradiction that Apartment 201 consisted of a regular, two-bedroom college apartment; he could not recall a dead bolt or a key entry to Appellee's bedroom. N.T., 7/13/15, at 26. Further, there was no indication that Appellee's bedroom had a separate mailbox, address, or any private entrance. *Id*. In concluding that the bedroom was a separate living unit, the trial court did not apply "a practical, common-sense" approach when determining whether the place to be searched was specified with sufficient particularity in the search warrant. *Irvin*, *supra*.

The case relied upon by the trial court to support its conclusion, *In the Interest of Wilks*, 613 A.2d 577 (Pa.Super. 1992), is inapposite. In *Wilks*, police observed the defendant engage in an alleged drug transaction on the street and then enter a residence on the second floor of a nearby

apartment building. Based on this observation, the police secured a search warrant which listed the area to be searched as the second floor of the building. Importantly, the search warrant did not specify a particular apartment number. When the police went to execute the warrant, they discovered two different apartments on the second floor. The door to Apartment C was open, so some of the police officers entered to "see if they could identify the person they wanted in the warrant." *Wilks*, 613 A.2d at 579 (citation omitted). A different officer knocked on the closed door of Apartment B and announced, "Police, open the door. We have a warrant." *Id.* Moments later, after hearing a commotion inside Apartment B, the police found the door unlocked and entered the premises. The police then observed the defendant sitting on a couch inside. When the defendant's mother arrived, she informed the police that one of the locked bedrooms inside Apartment B belonged to the defendant. A search of the defendant's bedroom revealed large amounts of drugs and a handgun. *Wilks*, *supra*.

The trial court granted the defendant's suppression motion in *Wilks*, and the Commonwealth filed a timely appeal to this Court. According to the Commonwealth, the warrant at issue met the particularity requirements, because, although an apartment number was not listed, "the warrant adequately identified the location by address, physical description, floor and name of occupant, and the targeted apparent was the only place searched and the only place from which evidence was seized." *Wilks*, 613 A.2d at

- 11 -

579 (capitalization omitted). We disagreed, holding that the warrant at issue "did not clearly describe the premises to be searched, but in essence, without probable cause, authorized the search of both apartments B and C which were located on the second floor." *Id.* at 580.

When discussing relevant case law in *Wilks*, this Court cited to our Supreme Court's previous decision in *Commonwealth v. Carlisle*, 517 Pa. 36, 40, 534 A.2d 469, 471 (1987), for the proposition that "[a] search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the *particular room* or subunit to be searched with sufficient definiteness to preclude a search of other units." *Wilks*, 613 A.2d at 579 (emphasis added). This reference to a particular room must, however, be read in context. In *Carlisle*, our Supreme Court cited with approval this Court's quoting the general requirement of particularity found in 68 Am.Jur.2d *Searches and Seizures* § 77 (1973). *Carlisle*, 534 A.2d at 471. Despite the mention of "room" in that treatise, our Supreme Court in *Carlisle* held the search warrant at issue described the premises to be searched with sufficient particularity even though the affidavit that accompanied the warrant designated only the specific *apartment* to be searched. *See Carlisle*, 534 A.2d at 471-72 (citing) (explaining that that the "evil to be

prevented is the search of other apartments where there is no legal basis for police intrusion.")[2]

Thus, **Wilks** cannot be read to preclude the search of both bedrooms inside a single apartment. Interestingly, as noted above, while the police searched a locked bedroom within Apartment B, it was the lack of an apartment number, rather the identification of an interior room, upon which this Court affirmed the trial court's order suppressing the evidence. **Wilks**, **supra**.

In fact, Article 1, Section 8 of the Pennsylvania Constitution has been held not to preclude a search of the entire residence where there is probable cause to believe that contraband is located within any particular room of a single living unit. In **Commonwealth v. Waltson**, 555 Pa. 223, 724 A.2d 289 (1998), the Pennsylvania State Police responded to a domestic dispute and were informed by the defendant's alleged girlfriend that the defendant was growing marijuana in the basement. Thereafter, a search warrant was issued, which described the premises to be searched by house number. Upon searching the entire residence, the police found not only ten marijuana plants growing in one room of the basement, but also found other drugs and drug paraphernalia throughout the rest of the house.

---

[2] Moreover, as discussed below, our Supreme Court has not differentiated between the probable cause necessary with regard to a particular room in a single living unit vis-à-vis the entire residence.

Following his conviction on various drug charges, the defendant filed a timely appeal to this Court, in which he challenged the trial court's denial of his suppression motion. We rejected his challenge to the trial court's suppression ruling and affirmed the defendant's judgment of sentence. *See Commonwealth v. Waltson*, 703 A.2d 518, 521 (Pa.Super. 1997) (concluding that "when there is probable cause to believe criminal activity is afoot in one room of a single unit household, a warrant to search the entire unit is not overbroad.") Our Supreme Court granted the defendant's petition for allowance of appeal "in order to address whether a search warrant is overbroad where it authorizes a search of an entire residence, where probable cause underlying the warrant relates to only a particular room of the house." *Waltson*, 724 A.2d at 290-91.

The high court held that, "where there is probable cause to believe that contraband is located within a particular room of a single unit house, Article 1, Section 8 does not preclude a search of the entire residence." *Id.* at 290. In doing so, our Supreme Court rejected the defendant's contention that the "Pennsylvania Constitution's enhanced privacy rights limit the scope of a lawful search of a single unit residence more than the Fourth Amendment." *Id.* at 291. The *Waltson* court then concluded the following:

> [W]here a search warrant adequately describes the place to be searched and the items to be seized the scope of the search "extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted."

*Id.* at 292 (quoting **Commonwealth v. Reese**, 520 Pa. 29, 549 A.2d 909, 911 (1988)) (footnote omitted). **See also Irvin**, **supra** (explaining that a second search warrant to search entire residence for heroin and funds derived from its sale was properly based on lawful observations during execution of initial search warrant).

In the case *sub judice*, the trial court did not recognize our Supreme Court's holding in **Waltson** and, nevertheless, concluded Appellee's locked bedroom door demonstrated that Mr. Murray could not have exercised dominion or control over the items in Appellee's room.   Once again, the trial court's conclusion is not supported by the uncontradicted evidence presented at the suppression hearing.  Officer Guido could not recall a dead bolt or key entry to Appellee's bedroom.[3]  The fact that Appellee locked the bedroom door from the inside establishes nothing more than the fact that Mr. Murray could not enter the bedroom at the time of the search.   Finally, we are unpersuaded by Appellee's attempt to avoid application of **Waltson** because the decision refers to a "single family residence."  **Waltson**, 724 A.2d at 293.  The fact that the suppression hearing transcript does not establish a familial relationship between Appellee and one or more of his roommates does not alter the fact that the entire apartment was the subject of the

---

[3] We reject Appellee's speculation that Trooper Guido's inability to recall a dead bolt or key entry to the bedroom door somehow established the presence of either mechanism. **See** Appellee's Brief at 7-8.

search.  ***See Irvin***, at *16 (upholding search of entire residence that was occupied by two male roommates).

In sum, we conclude that the suppression court erred in suppressing the evidence found in Appellee's bedroom within Apartment 201, when precedent establishes that there was probable cause to search the entire apartment.  Accordingly, we reverse the order granting suppression and remand this case for further proceedings, consistent with this Opinion.[4]

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judge Dubow joins the Opinion.

Judge Shogan files a Dissenting Opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2016

_____

[4] Given our disposition, we need not address the Commonwealth's alternative argument that probable cause arose regarding Appellee once he was searched and a quantity of Xanax was found on his person.  ***See*** Commonwealth's Brief at 16-17.