**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYLAN SCOTT TURPIN | : | |
| | : | |
| Appellant | : | No. 1656 MDA 2016 |

Appeal from the Judgment of Sentence May 10, 2016
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000623-2015

BEFORE: GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J. **FILED FEBRUARY 13, 2018**

Appellant, Dylan Scott Turpin, appeals from the judgment of sentence entered in the Court of Common Pleas of Cumberland County. On appeal, he raises two claims of suppression court error and argues the Commonwealth presented insufficient evidence to sustain his conviction for conspiracy to deliver a controlled substance (heroin). We affirm.

Police officers suspected Turpin's roommate, Ben Irvin, of dealing narcotics out of the single-family townhouse the pair shared. They investigated and confirmed their suspicion by setting up a controlled buy with a confidential informant. The buy took place off the premises, but officers observed Irvin leave the residence immediately prior to the buy and return to it directly after. The officers then obtained a warrant to search the entire residence for, among other things, heroin and drug paraphernalia. While executing the search of the townhouse, officers found six bags of

heroin, a handgun, marijuana, and a substantial amount of currency, among other items, in Turpin's bedroom.

Prior to trial, Turpin moved to suppress the contraband found in his room. He advanced two arguments. First, he claimed the search warrant was overbroad, as he maintained the law did not permit the officers to search his bedroom. According to Turpin, his bedroom constituted a separate living unit. Second, he claimed the handgun was outside the scope of the warrant and, alternatively, the handgun's incriminating nature was not immediately apparent to the officers. After conducting an evidentiary hearing, the suppression court found no viability to either of these arguments.

The matter proceeded to a two-day jury trial. The jury heard evidence offered by the Commonwealth of a rather sophisticated and extensive drug-dealing operation run from the residence. The jury convicted Turpin on all six counts, including conspiracy to deliver a controlled substance (heroin). The trial court subsequently imposed an aggregate period of imprisonment of 12 to 24 months. After the denial of Turpin's post-sentence motions, this timely appeal followed.

We begin with Turpin's two suppression issues.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record

as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

Both issues concern a search warrant.

Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in [*Illinois v.*] *Gates*, [462 U.S. 213,] the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Thus, the totality of the circumstances test "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip...." *Gates*, 462 U.S. at 234. It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

*Commonwealth v. Torres*, 764 A.2d 532, 537-538 (Pa. 2001) (some citations and quotation marks omitted).

The affidavit of probable cause details the investigation into Ben Irvin. Pertinent here, police observed activity at Irvin's residence that "was

- 3 -

indicative of drug dealing." Affidavit of Probable Cause, filed 2/19/15, at 3 (unnumbered). The investigation identified "two other individuals that seemed to be either living with Irvin or staying with him for periods of time." *Id*., at 2 (unnumbered). One of these roommates was Turpin.

Officers set up a controlled buy with a confidential informant and surveilled Irvin's residence prior to the buy. The officers observed Irvin leave the residence and drive to the pre-determined meeting location with the informant. The drug deal occurred and the officers recovered suspected heroin from the informant. They also observed Irvin return to his residence after the drug sale. This activity led the affiant to conclude "that Irvin's Heroin distribution has been ongoing and that additional Heroin is located within his residence." *Id*., at 4 (unnumbered).

The search warrant identified heroin, drug paraphernalia, proceeds from drug sales, and cell phones owned or possessed by Irvin as the items to be searched for and seized. The premises to be searched was identified as "[t]he residence at 105 E Green ST Mechanicsburg, PA 17055[,]" which is described as "single family townhouse" whose "address # '105' is printed directly beside the front door." Application for Search Warrant and Authorization, filed 2/19/15.

The police executed the search warrant and searched the entire residence, including Turpin's bedroom. In his bedroom, they recovered,

among other items, bags of heroin, a bag of marijuana, currency, and a stolen handgun.

Turpin first claims the search warrant was overbroad. The premise for this argument is Turpin's belief that the officers were not permitted to search his private bedroom. We disagree. As explained below, when probable cause exists to believe that contraband is located within a particular room of a single, shared residence, Article 1, Section 8 of the Pennsylvania Constitution does not preclude a search of the entire residence.

A warrant must "name or describe with particularity the … place to be searched." Pa.R.Crim.P. 205(A)(3). Paragraph (A)(3) is "intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant." Pa.R.Crim.P. 205, *Comment*. "[W]arrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." *Id*. **See also Commonwealth v. Carlisle**, 534 A.2d 469, 472 (Pa. 1987) (finding "a 'practical, common-sense' approach" should be taken in determining "whether the place to be searched is specified with sufficient particularity[]").

"Article 1, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment, … including a more demanding particularity requirement[.]" **Commonwealth v. Korn**, 139 A.3d 249, 253

(Pa. Super. 2016) (citations and material in brackets omitted; brackets added).

> In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described precise enough to enable the executing officer to ascertain and identify, with reasonable effort the place intended, and where probable cause exists to support the search of area so designated a warrant will not fail for lack of particularity.

*Id*., at 253-254 (citations and quotation marks omtted).

To support his argument that the warrant was overbroad, Turpin singularly relies on *Commonwealth v. Waltson*, 724 A.2d 289 (Pa. 1998). There, our Supreme Court considered "whether the search of an entire residence is barred as overbroad pursuant to Article 1, Section 8 where the affidavit of probable cause for the warrant references only a particular room within the residence." *Id*., at 290.

The facts in *Waltson* can be briefly stated. A woman told the police that her boyfriend was growing marijuana in the basement of their single unit house. The police obtained a warrant where the place to be searched listed the residence. And the items to be seized included drugs and drug paraphernalia. The police executed the warrant and searched the entire residence. They found the marijuana in the basement—and recovered other drugs and drug paraphernalia throughout the home.

The Court found "the scope of the search authorized by the warrant was lawful if it was limited to places within the premises where the police

had probable cause to believe that the items to be seized could be found." *Id*., at 293. As the search warrant included drugs and drug paraphernalia among the items to be seized, the Court concluded, "that the police could reasonably believe that these items would be found in places other than the basement and thus, police did not need to limit the scope of the search only to the basement." *Id*. "[T]he scope of the search extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted." *Id*., at 292 (citation and internal quotation marks omitted).

Turpin relies on *Waltson* to distinguish it from this case.

> The search in the present matter, unlike that in Waltson, was not limited to the areas under the control of the named resident but was expanded into an area under the control of Mr. Turpin, who was not the subject of any investigation and who was only incidentally referenced in the search warrant as an individual living at the residence. Thus unlike in Waltson, the privacy interests of an individual other than the named resident were implicated by the search of the residence and, in particular, by the search of Mr. Turpin's bedroom, an area of utmost privacy.

Appellant's Brief, at 17. Simply put, he contends the residence here, a "single family townhouse," as described by the affidavit of probable case, was occupied by two people whose bedrooms must be considered separate residences. Thus, barring the search of his bedroom.

Turpin's reliance on *Waltson* is mistaken, as a recent decision from our Court, which Turpin fails to cite, illustrates. In *Korn*, the police utilized a

- 7 -

confidential informant to make two controlled buys of Xanax from Korn's roommate. Korn and his roommate lived in a two-bedroom apartment. And the controlled buys took place in Korn's roommate's bedroom. The police obtained a search warrant to search the entire apartment for drugs. The subsequent search disclosed contraband in Korn's locked bedroom.

Korn moved to suppress the seized contraband and the suppression court agreed, finding: "Despite the fact that Apartment 201 contains multiple living units, the warrant fails to describe the particular living unit that was to be searched so as to ensure the other living units, for which no probable cause existed, were not searched." **Id**., 139 A.3d at 251-252 (citation omitted). A panel of this Court reversed the suppression order.

The panel observed the suppression "court's finding that [Korn]'s bedroom was a 'separate living unit' is supported by neither the evidence presented at the suppression hearing nor applicable case law." **Id**., at 254. In finding the two bedroom apartment did not contain separate living units, the panel noted "there was no indication that [Korn]'s bedroom had a separate mailbox, address, or any private entrance." **Id**. (citation omitted). That Korn's bedroom locked from the inside, the panel reasoned, "establishes nothing more than the fact that [Korn's roommate] could not enter the bedroom at the time of the search." **Id**., at 256. After finding the apartment consisted of a single residential unit, the panel applied **Waltson**

and concluded "there was probable cause to search the entire apartment." *Id*.

*Waltson* and *Korn* control this case. The officers suspected Turpin's roommate of dealing drugs out of the residence, a single-family townhouse. And a controlled buy confirmed their suspicion. There was no indication in the record that Turpin's bedroom had a separate mailbox, address, or any private entrance. In fact, when asked at the suppression hearing what he does with his bedroom when he is not at home, Turpin testified, "I shut my door." N.T., Suppression Hearing, 8/11/15, at 37. The officers had probable cause to search the entire residence for heroin.

Next, Turpin argues the suppression court erred in failing to suppress the handgun when its seizure was beyond the scope of the search warrant and it was not immediately apparent it was contraband. We disagree.

Detective Jared Huff testified he searched Turpin's bedroom and found the handgun after he "moved some things off the TV stand and tilted the TV stand over and there [it] was." N.T., Suppression Hearing, 8/11/15, at 28-29. Following protocol, he "immediately notified the other law enforcement on scene" he had found a handgun. *Id*., at 29. Another detective photographed the handgun, which was laying serial number side up.

Detective Troy McNair testified that once the handgun was photographed, he picked it up, cleared the weapon, and called in the serial number. The handgun came back as reported stolen.

Officers also found "bags of suspected heroin" and a "small bag of marijuana" in Turpin's bedroom. Receipt/Inventory of Seized Property, at 1 (unnumbered) (admitted at suppression hearing as Commonwealth's Exhibit 1).

It is true the search warrant did not designate a handgun as an item to be seized. But "[t]he plain view doctrine provides that evidence in plain view of the police can be seized without a warrant[.]" ***Commonwealth v. Anderson***, 40 A.3d 1245, 1248 (Pa. Super. 2012) (brackets in original and added; citations omitted).

> The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

***Id***. (citation omitted).

It is the third prong Turpin challenges. "In determining whether the incriminating nature of an object is 'immediately apparent' to a police officer, courts should evaluate the 'totality of the circumstances.'" ***Commonwealth v. Whitlock***, 69 A.3d 635, 637 (Pa. Super. 2013) (citations omitted). And the officer's belief of the object's incriminating nature must be supported by probable cause. ***See id***.

Here, looking at the totality of the circumstances, the incriminating nature of the handgun was immediately apparent—the officer recovered it in the same room as the heroin and marijuana. ***See United States v.***

*Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (finding incriminating nature of guns immediately apparent where they are found in close proximity to drugs and drug paraphernalia). The totality of the circumstances plainly reveals the incriminating nature of the handgun was immediately apparent.

Lastly, Turpin challenges the evidence presented by the Commonwealth to prove him guilty of conspiracy to deliver a controlled substance (heroin).

> In reviewing sufficiency of evidence claims, we determine whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's findings of all the elements of the offense beyond a reasonable doubt. A sufficiency challenge is a pure question of law. Thus, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017) (internal quotation marks and citations omitted).

"The Commonwealth establishes the offense of possession with intent to deliver when it proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Commonwealth v. Little*, 879 A.2d 293, 297 (Pa. Super. 2005) (citation omitted). *See also* 35 P.S. § 780-113(a)(30). As for criminal conspiracy, *see* 18 Pa.C.S.A. § 903(a)(1), the focal point is the agreement made by the co-conspirators to commit an overt act in furtherance of the agreed upon crime, *see Little*, 879 A.2d at 298. Direct evidence of the defendant's criminal intent or the conspiratorial agreement is rare. *See id*. So, "the

defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Id*. (citation omitted).

The Commonwealth presented evidence from two detectives about the highly unusual number of visitors to the home. For instance, Detective Mellott testified he observed "a large number of people stopping for very short periods of time to visit the residence…." N.T., Trial, 3/23/16, at 11-12. The visitors stayed "a few minutes" at most. *Id*., at 12. The Commonwealth also presented evidence the officers recovered over 300 bags of heroin from the residence. The officers found the heroin in both bedrooms and in a common area. One of the bags of heroin found in Turpin's room, labeled "Blue Magic," matched bags with same label in Irvin's bedroom and matched a bag of heroin recovered from the controlled buy. The Commonwealth also presented evidence the police found almost $1,000 in cash in Turpin's bedroom and that Turpin was unemployed. And they recovered the stolen handgun from Turpin's room.

We find the Commonwealth presented sufficient evidence to sustain Turpin's conviction for conspiracy to deliver a controlled substance (heroin). The above-described conduct constitutes sufficient circumstantial evidence of a conspiracy in which Turpin and Irvin were jointly involved in a drug dealing operation they ran from their home.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/13/2018