J. A12039/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1608 WDA 2018 |
| | : | |
| KEITH JOHNSON | : | |

Appeal from the Order Entered October 26, 2018,
in the Court of Common Pleas of Beaver County
Criminal Division at No. CP-04-CR-0000673-2018

BEFORE:  BENDER, P.J.E., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 23, 2019**

The Commonwealth of Pennsylvania appeals from the October 26, 2018 order entered in the Court of Common Pleas of Beaver County granting the ***omnibus*** pre-trial suppression motion filed by appellee, Keith Johnson.  We affirm.

The trial court set forth the following findings of fact:

>    1.    On February 19, 2018, in the Borough of Ambridge, Beaver County, Pennsylvania, Officer Joshua Causer received a call around 8:40 p.m. reporting that a male was trying to sell a handgun in Fred's Divot, a drinking establishment located at 816 Merchant Street, Ambridge.
>
>    2.    The report was made by the bartender from Fred's Divot, Jeremy Bohinsky.
>
>    3.    The information in the telephone report to the Ambridge police was that a male was trying to

sell a gun at the bar. The male was described as a "black male, short in stature, wearing a red and black hoodie."

4. The information conveyed to the police by the bartender was that he overheard one conversation between the suspect and one patron. The bartender reported that he observed the suspect speaking to other patrons but he did not hear those conversations.

5. Officer Causer was familiar with Mr. Bohinsky because Mr. Bohinsky was a witness or a complainant in "previous incidents that [Ambridge Police] had at the bar where drunks were thrown out of the bar or [for] fights that occurred in front of the bar."

6. Officer Causer and Officer Chickos of the Ambridge Police Department responded to the call at Fred's Divot within 5 to 10 minutes from the time of the call. Officer Chickos spoke to the bartender upon their arrival at Fred's Divot.

7. The bartender pointed out the suspect to the police and the bartender repeated that he overheard the suspect trying to sell a handgun. There was no information provided to the police as to when or where any potential sale was to be completed.

8. The bartender never reported to the police that the suspect was harassing the patrons[,] or[] that the bartender saw the suspect possessing a firearm.

9. The officers spoke with no patrons at Fred's Divot once they arrived on scene.

10. The officers observed [appellee] for less than five minutes before the officers detained him.

11.  Prior to the time that [appellee] was detained, the police observed no firearm or suspicious bulges on [appellee's] clothing.

12.  After the police arrived, [appellee] exhibited no suspicious behavior and he made no furtive motions indicative of concealing a firearm.

13.  There was no information provided to the police that a gun was ever seen, displayed, or that [appellee] made a move for his belt/waistband to show anyone the gun.

14.  The officer had no information available to him concerning [appellee's] status as a person who was not permitted to possess a firearm and the officer had no information as to whether [appellee] was licensed to carry a firearm.

15.  The testimony of [appellee] that he was approached by one officer in the front who was blocking his access to the door and another officer from the back who initially grabbed him by his shoulder or arm is found to be credible.

16.  When the officers approached [appellee] at Fred's Divot, one of the officers blocked the door such that [appellee] could not leave the bar.

17.  After the initial interaction where the officers positioned themselves in front and behind [appellee], the police escorted [appellee] outside of Fred's Divot. [Appellee] was being physically restrained by the officer who was behind him by that officer's conduct in holding on to [appellee's] arm.

18.  From the initial point of the contact between the officers and [appellee], [appellee] was not free to leave.

19.  There was no information available to the police or discovered by the police that [appellee] attempted to run from the police or, that he was

engaging in any suspicious behavior once the police arrived at Fred's Divot.

20. While [appellee] was detained, he admitted to the police officers that he was in possession of a gun. He was searched and the officers seized a Tiffany Blue Glock 43 9mm from his waistband.

21. The Commonwealth stipulated that the police interaction rose to the level of an investigative detention.

22. [Appellee] made admissions concerning his possession of the gun and of his reason for possessing the gun. These admissions were made after he was escorted out of Fred's Divot and while he was being detained by the police.

Trial court opinion, 10/26/18 at 2-5 (footnotes omitted).

Appellee was arrested and charged with persons not to possess, use, manufacture, control, sell, or transfer firearms, and firearms not to be carried without a license.[1] Appellee filed an **omnibus** pre-trial motion arguing that the officers lacked reasonable suspicion to stop and detain him. (Appellee's **omnibus** pre-trial motion, 5/31/18 at unnumbered pages 4-5.) After conducting a hearing, the trial court granted the suppression motion. (Trial court opinion and order, 10/26/18.)

The Commonwealth filed a timely notice of appeal wherein it certified that the suppression court's order would substantially handicap the prosecution of this case. (**See** Commonwealth's notice of appeal, 11/2/18;

---

[1] 18 Pa.C.S.A. §§ 6105(b) and 6106 (a), respectively.

J. A12039/19

*see also* Pa.R.A.P. 311(d) (stating, "[i]n a criminal case . . . the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.").) The trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. The Commonwealth timely complied. The trial court subsequently filed its Rule 1925(a) opinion wherein it relied on its October 26, 2018 opinion and order as the basis for granting the suppression motion.

The Commonwealth raises the following issue for our review:

> Whether the suppression court erred in granting appellee's motion to suppress evidence stemming from an investigative detention on February 19, 2018, where a police officer received information from a known informant that [a]ppellee was attempting to engage in criminal activity when he was trying to sell a handgun to a patron in a bar?

Commonwealth's brief at 4.

Our standard of review in addressing a trial court's order granting a suppression motion is well settled.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the [appellee's] witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to

- 5 -

> determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain ***de novo*** review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 253-254 (Pa.Super. 2016) (internal citations and quotation marks omitted), ***appeal denied***, 159 A.3d 933 (Pa. 2016).

Here, it is undisputed that appellee's encounter with the officers rose to the level of an investigative detention. (***See*** Commonwealth's brief at 23; notes of testimony, 10/2/18 at 35.) The Commonwealth argues that the tip was reliable because the officers knew the informant, and therefore, the tip established reasonable suspicion in and of itself. (Commonwealth's brief at 33-34.) The trial court credited the informant as reliable, but deemed the tip insufficient to substantiate a reasonable suspicion that criminal activity was afoot when the totality of the circumstances was considered. (Trial court opinion, 10/26/18 at 10, 13.)

"An investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity" and "the demand for specificity in the information upon which police action is predicated is the central teaching of" Fourth Amendment jurisprudence. ***Commonwealth v. Hicks***, 208 A.3d 916, 927, 938 (Pa. 2019) (citations omitted). "Reasonable suspicion is a less stringent standard than probable

cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances." **Commonwealth v. Brown**, 996 A.2d 473, 477 (Pa. 2010). Our supreme court recently held:

> A police officer is entitled to view individuals' conduct in light of the "probabilities" that criminal activity may be afoot, and indisputably may draw "certain common sense conclusions about human behavior." Relevant contextual considerations may include factors such as a suspect's presence in a high crime area.
>
> . . . .
>
> [T]he totality of the circumstances test, which, as noted above, nonetheless requires some "particularized and objective basis for suspecting the particular person stopped of criminal activity." An officer certainly is entitled to consider "probabilities" and to employ "common sense," but, quite fundamentally, "the whole picture" of the circumstances "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing."

**Hicks**, 208 A.3d at 938-939, citing **U.S. v. Cortez**, 449 U.S. 411, 417-418 (1981) (other citations omitted).

Here, Officer Causer received a tip from the bartender at Fred's Divot that a man, described as "a black male, short in stature wearing a red and black hoodie," was at the bar and "attempting to sell a gun." (Notes of testimony, 10/2/18 at 6.) Officer Causer was familiar with the bartender, as he had been a witness or a complainant in previous incidents at the bar. (**Id.**) Upon arriving at the bar, the bartender told the officers he overheard a man

trying to sell a gun to one patron at the bar, and the bartender identified the man as appellee. (***Id.*** at 8-9, 14.) The bartender told the officers that he observed appellee "going up to several people and probably doing the same" but that he did not hear the conversations appellee had with those other people at the bar. (***Id.*** at 9, 14.) The bartender did not tell the officers that he saw appellee with a gun or that he heard any information about when or where the sale of the gun was to take place. (***Id.*** at 16-17, 21.)

Officer Causer observed appellee for less than five minutes sitting "down with his drink at the other end of the bar" while the officers spoke with the bartender. (***Id.*** at 18, 22.) Officer Causer did not see appellee with a gun. (***Id.*** at 21.) Prior to the investigative detention, Officer Causer did not position himself at the bar in an attempt to observe any activity by appellee that may have been suspicious. (***Id.*** at 18, 20-23.) Appellee did not attempt to flee the bar once the police arrived. (***Id.*** at 18.)

The record supports the trial court's findings of fact. In consideration of the totality of the circumstances, however, Officer Causer did not have some particularized and objective basis to suspect appellee was engaged in criminal activity thereby justifying the investigative detention. Although the tip came from a reliable source, the tip was merely that the bartender overheard a conversation, without seeing appellant actually in possession of a gun. This tip alone was insufficient to support a reasonable suspicion that criminal activity was afoot

For the forgoing reasons, we find that the trial court did not err in granting the motion to suppress the evidence obtained as a result of this illegal investigative detention.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/23/2019