J-S10018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STAFFORD ALPHANSO | : | No. 1102 MDA 2021 |
| WEDDERBURNE | : | |

Appeal from the Order Entered August 3, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004833-2020

BEFORE:   MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: JULY 15, 2022**

The Commonwealth appeals the grant of Stafford Alphanso Wedderburne's motion to suppress evidence seized during a vehicle stop. The Commonwealth maintains that the trial court erred in granting the motion because police had probable cause and there were exigent circumstances. It further maintains that the search is supported by the doctrines of plain view, inventory search, and inevitable discovery. We affirm.

Following a traffic stop, an officer searched Wedderburne's vehicle and recovered loose marijuana, marijuana cigarettes, loose bullets, and a firearm. The Commonwealth charged Wedderburne with multiple offenses including persons not to possess a firearm and possession of a small amount of

_____

[*] Retired Senior Judge assigned to the Superior Court.

marijuana.[1] He filed a motion to suppress, arguing that the police officer lacked probable cause and that there were no exigent circumstances sufficient to excuse the failure to get a warrant. *See* Omnibus Pretrial Motion, filed 3/24/21, at ¶¶ 17-18. The trial court held a hearing on the motion.

Officer Brian Aponte testified that on September 17, 2020, around 1 a.m., he observed a Hyundai sedan with a nonfunctioning left brake light. N.T., Suppression Hearing, 5/3/21, at 5. Officer Aponte stopped the vehicle because of the brake light. *Id.* at 6. He approached the vehicle and observed Wedderburne in the driver's seat. *Id.* at 8. He also testified that there were two other individuals in the car, one in the back passenger-side seat and one in the front passenger seat. *Id.* at 7. After approaching the vehicle on the front passenger side, he asked Wedderburne to roll down the window. *Id.* Officer Aponte noticed an odor of marijuana coming from the car and marijuana "blunts" or "roaches" in the center console, underneath the radio. *Id.* at 8. Officer Aponte requested backup "due to the time of the night and the amount of people in the vehicle." *Id.*

Officer Aponte explained to Wedderburne the reason for the traffic stop and asked for the insurance and registration for the vehicle. *Id.* at 9. Wedderburne told the officer that his sister was the owner of the vehicle and that he would try to find the paperwork. *Id.* at 9, 10. Officer Aponte suggested that he look in the glove compartment, and without "even try[ing] to go in

_____

[1] 18 Pa.C.S.A. § 6105(a)(1) and 35 P.S. § 780-113(a)(32), respectively.

there," Wedderburne replied that it was not located in the glove compartment. *Id.* at 10. Officers Prisbe and D'Arcy arrived as backup for Officer Aponte. *Id.* at 12.[2] Officer Aponte asked Wedderburne for his license, who replied that he did not have one and retrieved his Pennsylvania identification card ("ID") from a bookbag. *Id.* at 9, 13. Officer Aponte saw that Wedderburne's license was suspended and told him that based on the smell of marijuana and the marijuana blunts in the vehicle, he was going to search the vehicle. *Id.* at 13, 14. Wedderburne started to reach for the marijuana blunts, and Officer Aponte "advised him to just leave them alone, that we would get to it[.]" *Id.* at 14. Officer Aponte asked for consent to search the vehicle, but Wedderburne said that he could not give consent because it was not his vehicle. *Id.* at 14.

Officer Aponte testified that it was his understanding that the vehicle search was allowed based on the smell of marijuana. *Id.* at 12. He removed Wedderburne from the vehicle and asked him to stand by the backup officers who were on the sidewalk. *Id.* at 14-15. Officer Aponte then had the passengers exit the vehicle. *Id.* at 15.

After all the occupants were out of the car, Officer Aponte searched it. During the search, all the occupants were standing on the sidewalk next to the backup officers. *Id.* at 15. He found a plastic baggie of leafy vegetable substance that appeared to be marijuana and marijuana roaches in the center console. *Id.* He also found duct tape, latex gloves, a bandana, and several

---

[2] The first name of these officers is not provided in the transcript.

loose 9-millimeter bullets in the bookbag from which Wedderburne had retrieved his ID. *Id.* at 16. Officer Aponte also discovered a firearm in the glove compartment. He later learned the gun was stolen and that Wedderburne had a prior felony that prevented him from lawfully possessing a firearm. *Id.* at 18, 29. Police placed all occupants under arrest and conducted a search incident to arrest. Officer Aponte recovered from Wedderburne's person marijuana, latex gloves, and a bandana. The latex gloves and bandana appeared to match those found in the bookbag. *Id.* at 20. The court had the parties submit briefs and, with court permission, the Commonwealth also submitted a copy of a police mobile video audio recording ("MVR") of the incident. *See id.* at 28.

The trial court granted the suppression motion. *See* Order of Court, filed 8/2/21. It concluded that exigent circumstances did not exist for the officer's safety or to preserve potential evidence in the vehicle. *See* Memorandum Opinion and Order of Court, filed 8/2/21, at 5-6. It concluded that the plain view doctrine did not cure the illegality of the search of the vehicle because "exigent circumstances did not exist, and the officer did not have some prior justification to give him lawful access to the items" that were seized. *Id.* at 7. The court noted that the Commonwealth argued that the evidence could have been inevitably discovered because officers could have conducted an inventory search of the vehicle. However, the court was unpersuaded by this argument, concluding that the MVR showed that officers merely moved the car to a parking lot for Wedderburne's sister to pick up and did not impound

it. ***See id.*** at 8. It also concluded that the inevitable discovery doctrine applies to what "would have been discovered," not what could have been lawfully discovered. ***See id.***

The Commonwealth timely appealed. It raises one issue: "Whether the trial court erred in granting [Wedderburne's] suppression motion where law enforcement possessed probable cause and exigency to conduct the search in question, which was also supported by the doctrines of plain view, inventory searches, and inevitable discovery[.]" Commonwealth's Br. at 4.

When reviewing the grant of a motion to suppress, we "consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." ***Commonwealth v. Korn***, 139 A.3d 249, 252 (Pa.Super. 2016). We are bound by factual findings of the suppression court that are supported by the record. ***Id.*** We review the legal conclusions *de novo*. ***See id.*** at 252-53.

The Commonwealth argues that the trial court erred in granting suppression. It maintains that Wedderburne did not properly preserve a challenge under ***Commonwealth v. Alexander***, 243 A.3d 177 (Pa. 2020) (requiring probable cause and exigent circumstances for warrantless search of vehicle) because he only argued that exigent circumstances did not exist. It further argues that exigent circumstances did exist, and that the doctrines of inevitable discovery and plain view render suppression improper.

*Exigent Circumstances*

The United States and Pennsylvania Constitutions protect against unreasonable searches and seizures. *See Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa.Super. 2017). "[A] warrant stating probable cause is required before a police officer may search for or seize evidence" unless an exception to the warrant requirement applies. *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012). As applied to vehicle searches, Pennsylvania law requires police to have a warrant unless probable cause and exigent circumstances exist. *Alexander*, 243 A.3d at 181.

Exigent circumstances will excuse a warrantless search or seizure where the Commonwealth establishes that there is a "compelling need [by officers] for official action and no time to secure a warrant." *Commonwealth v. Trahey*, 228 A.3d 520, 530 (Pa. 2020) (citation omitted). The compelling need usually exists "either because evidence is likely to be destroyed, or because there exists a threat of physical harm to police officers or other innocent individuals." *Commonwealth v. Stewart*, 740 A.2d 712, 717 (Pa.Super. 1999) (citation omitted). Determining whether exigent circumstances exist requires a consideration of the totality of circumstances and entails a case-by-case assessment. *Trahey*, 228 A.3d at 530, 531.

The Commonwealth claims exigent circumstances existed here because Wedderburne "made a motion consistent with attempting to dispose" of the marijuana blunts. *Id.* at 15, 16. It also cites concerns about officer's safety. The Commonwealth notes that because of the number of occupants in the

vehicle at the time of the traffic stop, and the time of day, Officer Aponte felt that it was necessary to call backup. It also maintains that Wedderburne waived any challenge to the search pursuant to **Alexander** because he only challenged the exigent circumstances and not the probable cause to search the vehicle. **Id.** at 14. In support, the Commonwealth cites Wedderburne's brief following the suppression hearing. **Id.**

Wedderburne properly preserved his challenge under **Alexander** by raising it in his motion to suppress. **See** Omnibus Pre-Trial Motion at ¶¶ 17-18. He further developed and briefed the applicability of **Alexander** in his post-suppression hearing brief. **See** Defendant's Brief in Support of Omnibus Pretrial Motion, filed 5/21/21, at 6-9 (unnumbered). Although he limited his argument in that brief to contending that the Commonwealth had failed to establish exigent circumstances, and did not discuss probable cause, that does not mean he waived all arguments under **Alexander**.

As to the Commonwealth's argument on exigency, it is meritless. First, there was no testimony that Wedderburne was trying to "dispose of" the burnt marijuana blunts. Rather, Officer Aponte testified that after he told Wedderburne that he saw the blunts, Wedderburne reached toward them, at which point Officer Aponte told him to leave them and that he would get them. Officer Aponte did not say that Wedderburne thereafter continued to reach toward the blunts, or that he believed Wedderburne was attempting to discard or destroy them.

Second, the claim that the officers' safety was at risk when Officer Aponte searched the vehicle lacks substantiation in the record. Officer Aponte did not search the car until all the occupants had gotten out of it and were standing next to the backup officers. Moreover, no testimony suggests the occupants did anything at the time of the search that could reasonably pose a risk to officer safety. The record does not support a conclusion that "the exigencies of the situation ma[d]e the needs of law enforcement so compelling that the warrantless search [was] objectively reasonable[.]" **Alexander**, 243 A.3d at 208. The trial court did not err in rejecting the claim of exigent circumstances.

*Inevitable Discovery*

The inevitable discovery doctrine provides that suppression of evidence seized without a warrant can be avoided where the Commonwealth shows by a "preponderance of the evidence that the illegally obtained evidence ultimately or inevitably *would* have been discovered by lawful means[.]" **Commonwealth v. King**, 259 A.3d 511, 522 (Pa.Super. 2021) (citation omitted) (emphasis added). The Commonwealth "must demonstrate that the evidence **would** have been discovered absent the police misconduct, not simply that they somehow **could** have lawfully discovered it." **Commonwealth v. Perel**, 107 A.3d 185, 196 (Pa.Super. 2014) (emphasis in original).

The Commonwealth argues that the evidence would have been discovered because officers "*could* have impounded the vehicle and conducted

an inventory search." Commonwealth's Br. at 18 (emphasis added). As the trial court stated, the Commonwealth must demonstrate that the officers *would* have discovered the evidence. Nothing in the record shows that Officer Aponte conducted an inventory search of the vehicle or even that police attempted to impound the vehicle. Rather, the MVR showed that police left the car in a parking lot for Wedderburne's sister to retrieve. The Commonwealth at most has shown that the police "somehow **could** have lawfully discovered" the evidence. **Perel**, 107 A.3d at 196. The trial court did not err in finding that the inevitable discovery doctrine was inapplicable here.

*Plain View*

The plain view doctrine allows police to seize evidence without a warrant where: "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to [the officer] that the object is incriminating; and (3) the officer has a lawful right of access to the object." **Commonwealth v. Heidelberg**, 267 A.3d 492, 504 (Pa.Super. 2021) (citation omitted).

The Commonwealth maintains that "the search of the vehicle was justified by plain view[.]" Commonwealth's Br. at 16. It states that Officer Aponte conducted a lawful traffic stop based on probable cause because Wedderburne's brake light was not working. It states that Officer Aponte was in a lawful vantage point while conducting the traffic stop when he smelled the odor of marijuana and saw the marijuana blunts in the center console. Officer Aponte also testified that he observed what he described as marijuana blunts or roaches in the center console, evidence which the Commonwealth

contends he believed to be incriminating considering that he then conducted a search of the vehicle after this observation. The Commonwealth argues that because the first two prongs of the plain view doctrine are satisfied, "the limited automobile exception afforded Officer Aponte lawful access to the evidence since the probable cause arose suddenly without advance warning that [Wedderburne] or his vehicle would be the target of a police investigation." Commonwealth's Br. at 17-18.

The Commonwealth's argument fails for several reasons. First, the plain view doctrine applies to the seizure of evidence. It cannot serve to justify the search of the car, as the Commonwealth suggests. *See Commonwealth v. Lutz*, 270 A.3d 571, 577 (Pa.Super. 2022) ("the plain view doctrine provides that evidence in plain view of the police can be *seized* without a warrant") (quoting *Commonwealth v. Luczki*, 212 A.3d 530, 546 (Pa.Super. 2019) (emphasis added). Second, there is no evidence that Officer Aponte could view the duct tape, latex gloves, bandana, bullets, or gun from a lawful vantage point. According to the testimony, he did not see any of them until he conducted the illegal search of the car.

Regarding the marijuana blunts, even assuming the first two prongs of the doctrine are met – view from a lawful vantage point and immediately apparent incrimination – Officer Aponte did not have a lawful right of access. As explained above, pursuant to *Alexander*, the Commonwealth's claim to Pennsylvania's "limited automobile exception" fails. The trial court did not err

by concluding that the plain view doctrine was not applicable. We affirm the order granting Wedderburne's motion to suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2022