J-A06015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRA RYAN SLEDGE, SR. | : | |
| | : | |
| Appellant | : | No. 673 WDA 2022 |

Appeal from the Judgment of Sentence Entered February 25, 2022
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0002693-2019

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                              **FILED: MAY 23, 2023**

Appellant, Andra Ryan Sledge, Sr., appeals from the February 25, 2022 judgment of sentence entered in the Court of Common Pleas of Fayette County that imposed an aggregate sentence of 4 to 8 years' incarceration to be followed by 12 months' probation.  On January 6, 2022, a jury convicted Appellant of manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance (Count 1), possession of a controlled substance (Count 2), and possession with the intent to use drug paraphernalia (Count 3).[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. 780-113(a)(30), (16), and (32), respectively.

The trial court summarized the factual history as follows:

On June 28, 2019, the Fayette County [Drug] Task Force [("the task force")] assisted by police officers from the City of Connellsville Police Department served a search warrant for the property located at [] North Pittsburgh Street in Connellsville, Pennsylvania, known as "The Studio".[2] Members of the task force arrived at the location and were [granted] entry by [Appellant]. When the [task force] officers entered the residence[,] Appellant's brother[] was present. In the back room of the residence, the task force [officers] located a [shoebox] with several baggies of varying sizes[, which contained] crack cocaine and [United States] currency. The sum of [$2,300.00] was in the [shoebox]. The [shoebox] also contained various papers with [] Appellant's name on them and a [prescription] bottle of medicine also with his name on it. []Appellant was found to have [$502.00] on his person. During the search, measuring cups, pots[,] and pans were found on the counters in the kitchen area with white residue in them. The task force located [six cellular telephones] in the residence.

Trial Court Opinion, 7/29/22, at 2 (record citations and extraneous capitalization omitted; paragraph formatting modified).[3]

On January 6, 2022, a jury convicted Appellant of the aforementioned offenses. On February 25, 2022, the trial court sentenced Appellant to 4 to 8 years' incarceration, to be followed by 12 months' probation, on the manufacture, delivery, or possession with the intent to manufacture or deliver a controlled substance conviction. Sentencing Order (Count 1), 2/25/22. On

---

[2] We omitted the specific numerical address of the subject property relevant to this appeal.

[3] For ease of reference, we have assigned page numbers to the trial court's unpaginated opinion.

Appellant's two remaining convictions, the trial court imposed no further penalty. Sentencing Order (Counts 2 and 3), 2/25/22.[4]

On February 25, 2022, Appellant filed a post-sentence motion, requesting a new trial. Appellant asserted that he was entitled to a new trial because, *inter alia*, (1) the Commonwealth failed to provide "the search warrant for the cellular [tele]phones, or the information extracted from the cellular [tele]phones" to Appellant during pre-trial discovery in violation of Pennsylvania Rule of Criminal Procedure 573 and *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) the trial court abused its discretion in denying Appellant's requests for a mistrial on the grounds the Commonwealth violated Appellant's Fifth Amendment right to remain silent when Detective James Tyler Garlick ("Detective Garlick"), on cross-examination, testified that Appellant did not deny he was selling drugs when asked by the investigating police officers, and the Commonwealth mentioned Appellant's silence during its closing argument. *See* Post-Sentence Motion, 2/25/22. On May 17, 2022,

---

[4] We note that two separate sentencing orders were entered on the trial court docket.

the trial court denied Appellant's post-sentence motion.[5] This appeal followed.[6]

Appellant raises the following issues for our review:

[1.] Did the trial court err in denying Appellant's motion to suppress all evidence found at [the North] Pittsburgh Street [property in] Fayette County, Pennsylvania, based upon the [warrant's lack of specificity as to which particular] unit [would] be searched?

[2.] Did the trial court abuse its discretion in failing to grant Appellant's motion for a mistrial based upon the Commonwealth's failure to serve the search warrant for the cellular [tele]phones and by not providing [] Appellant with the results of the search or the supplemental reports of the affiant?

[3.] Did the Commonwealth violate Appellant's guaranteed right of access to evidence under the due process clause of the [United] States Constitution by failing to provide the search warrant for the cellular [tele]phones, the results of the search of the [cellular tele]phones, or the supplemental reports of the affiant?

[4.] Did the trial court abuse its discretion in failing to grant Appellant's motion for a mistrial based upon [Detective] Garlick's comments [regarding] Appellant's post[-]arrest silence and the [Commonwealth's] reiteration of Appellant's post-arrest silence in its closing argument?

[5.] Did the trial court abuse its discretion in failing to grant Appellant's motion for a mistrial based upon the testimony of Detective Thomas Patton that he was assisting

_____

[5] On March 31, 2022, Appellant filed a brief in support of his post-sentence motion. On April 8, 2022, the Commonwealth filed a memorandum of law in opposition to Appellant's post-sentence motion. On April 13, 2022, the trial court entertained argument on the matter.

[6] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. *See* Pa.R.A.P. 1925.

[Detective] Garlick in a drug investigation into illegal narcotics being sold out of the premise[s] when Appellant was not charged with said crime nor was there any evidence presented that said crime occurred?

Appellant's Brief at 8 (extraneous capitalization omitted).

Appellant's first issue challenges the trial court's order denying his *omnibus* pre-trial motion, which sought to suppress physical evidence uncovered during a search of the North Pittsburgh Street property. Appellant's Brief at 12-15.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Wallace**, 42 A.3d 1040, 1047-1048 (Pa. 2012); **see also** Pa.R.Crim.P. 581(H) (stating, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights"). Our standard of review for an order denying a motion to suppress is well-established.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [suppression] court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the

suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [suppression court] are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (quotation marks omitted), *quoting* *Commonwealth v. Kemp*, 195 A.3d 269, 275 (Pa. Super. 2018).

A review of the record demonstrates that on February 14, 2020, Appellant filed an *omnibus* pre-trial motion. In his *omnibus* motion, Appellant asserted that the physical evidence uncovered during the search of the North Pittsburgh Street property should be suppressed because the search warrant lacked sufficient specificity as to the areas of the premises where probable cause supported the search. *Omnibus* Motion, 2/14/20, at ¶¶13-16. Appellant averred that the North Pittsburgh Street building "is a mixed residential and commercial property comprised of a former convenience store in the rear, facing Decatur Avenue, a front portion [of the building,] and two apartments in the upstairs" with the "front and rear [portions of the building serving as] common areas for the apartments and either entrance [being] used to access the apartments." *Id.* at ¶¶8-9. Appellant argued that "[t]he search warrant in question seeks [authority] to search the entire building despite the fact that the affidavit of probable cause states that [police] officers only viewed the [c]onfidential [i]nformant enter and exit through [a certain apartment door in the North Pittsburgh Street building.]" *Id.* at ¶16. Appellant asserted that the police officers "did not have probable cause to

- 6 -

search the entire building based upon the facts set forth in the [a]ffidavit of [p]robable [c]ause and, as a result, the search warrant[, and all items seized as a result of the search,] must be suppressed." *Id.* at ¶¶17-18.

> It is well-established that for a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance, and make this determination on facts described within the four corners of the supporting affidavit, and closely related in time to the date of issuance of the warrant.

*Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016), *appeal denied*, 159 A.3d 933 (Pa. 2016); *see also* Pa.R.Crim.P. 203(D) (stating, "at any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in [Pennsylvania Rule of Criminal Procedure 203(B)]"). Pennsylvania Rule of Criminal Procedure 203(B) states that, "No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits." Pa.R.Crim.P. 203(B). "[P]robable cause exists when, based upon a totality of the circumstances set forth in the affidavit of probable cause, there is a fair probability that evidence of a crime will be found in a particular place." *Korn*, 139 A.3d at 254, *citing Commonwealth v. Lyons*, 79 A.3d 1053 (Pa. 2013).

Aside from the requirement that the search warrant be supported by probable cause, the search warrant, to be constitutionally sound, must also describe the place to be searched and the items to be seized with specificity. ***Korn***, 139 A.3d at 253; ***see also Commonwealth v. Turpin***, 216 A.3d 1055, 1067 (Pa. 2019). "The place to be searched must be described precisely enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity." ***Turpin***, 216 A.3d at 1067 (brackets omitted). "[W]here a search warrant adequately describes the place to be searched and the items to be seized[,] the scope of the search extends to the entire area in which the object of the search may be found." ***Id.*** at 1069 (original quotation marks and original brackets omitted). Moreover, our "Supreme Court has held a 'practical, common-sense' approach should be taken in determining whether the place to be searched is specified with sufficient particularity." ***Korn***, 139 A.3d at 253, *citing* ***Commonwealth v. Carlisle***, 534 A.2d 469 (Pa. 1987); ***see also Commonwealth v. Leed***, 186 A.3d 405, 415 (Pa. 2018) (stating that, "both the magistrate in his or her pre-search determination, and the trial court in its post-search review must read probable cause affidavits in a common[-]sense fashion to ascertain whether probable cause exists" (citation and footnote omitted)).

In the instant matter, the trial court, on May 19, 2020, denied Appellant's *omnibus* motion, succinctly stating that "the information contained

in the search warrant affidavit is sufficient to establish probable cause[.]" Trial Court Order, 5/19/20.  In a supplemental opinion, filed July 11, 2022, the trial court explained,

> In the [*omnibus* motion,] Appellant claimed that the search warrant lacked specificity because the residence is part of a multi-unit complex, and the warrant listed both house numbers in the address.  Appellant argued that the warrant should have only included [the single] address [where] the police saw the confidential informant enter and exit when conducting the investigation.  Appellant claims that[,] therefore[,] the warrant should not be allowed for the entirety of the complex due to the confidential informant only entering and exiting through one door of the complex.  However, in the affidavit of probable cause for the warrant it stated that the criminal activity was taking place at the location of "N. Pittsburgh St. front and rear."
>
> . . .  According to the affidavit, the confidential informant in the investigation [identified] the location of the drug activity as "[the] N. Pittsburgh St." [property.]  The [confidential] informant stated that the residence was the location of drug trafficking and that [the confidential informant] purchased the drugs from Appellant. The confidential informant did not state that the criminal activity was taking place in only one of the units.  Furthermore, the affidavit refers to the residence of [] Appellant as being ["the N. Pittsburgh St. property,] front and rear."  Therefore, there is no ambiguity as to the location of the residence.

Trial Court Opinion, 7/11/22, at 3-4.

A review of the search warrant demonstrates that the items to be searched for, and potentially seized, were described as,

> Controlled substances, drugs, paraphernalia, records of drug transactions and indicia, and [United States] currency in proximity of any illicit drugs.  Specifically, "CRACK" COCAINE, scales, baggies, safes, and other items used in violation of the Controlled Substances, Drugs, Device, and Cosmetic Act.  Items used to protect and facilitate a drug distribution business such as weapons, pagers, receipts, owe sheets, and cellular [tele]phones,

computers, hard drives, any and all electronic storage mediums[,] and contents therein.

Search Warrant, 6/28/19, at 1, 6. The search warrant described the premises to be searched as,

> [] N[.] Pittsburgh St[.] (front and rear) Connellsville, Fayette County, Pennsylvania, the front of which is a two-story building with red stone (first story) and tan siding (second story) facing west on the eastern side of N[.] Pittsburgh St[.], and the rear of which (attached with access to the front) is a single-story blue brick building with glass double doors known as "The Studio," facing east on the western side of Decatur Ave[.] across from [a senior citizens center. Appellant], known as "Drey," age 34, and those not yet known to your affiant to reside, frequent, or otherwise stay in the residence located at [] N[.] Pittsburgh St[.], front and rear, known as The Studio.

*Id.* at 1, 7. The affidavit of probable cause set forth, in pertinent part, the following averments in support of establishing probable cause:

> 6. In June [] 2019[,] while working for the Fayette County [Bureau of Investigations, affiant,] along with [another police detective,] investigated a controlled drug transaction conducted at [] N[.] Pittsburgh St[.], front and rear, Connellsville, Fayette County, Pennsylvania. At this time[,] a [confidential informant] arranged to purchase "CRACK" COCAINE from inside that residence, occupied [by Appellant.] The [confidential informant] and his/her belongings were searched and found to be free of all monies and contraband. The [confidential informant] was then given official funds to make the purchase. The [confidential informant] was kept under constant surveillance from our meeting location until he/she arrived at [] N[.] Pittsburgh St[.], front and rear. The [confidential informant] entered through the eastern glass double doors of the building, facing Decatur Ave[.], and remained inside for a short period of time before exiting those same doors. [Police detectives] kept the [confidential informant] in our view as he/she returned to our meeting location where the [confidential informant] handed over a small plastic baggie corner of suspected CRACK COCAINE. The [confidential informant] and his/her belongings were again searched and found to be free of all

- 10 -

monies and contraband. The [confidential informant] advised [police detectives] that he/she entered the residence and met with [Appellant], and the [confidential informant] handed [Appellant] the money who then retrieved the CRACK COCAINE from a small black box behind the television while in the living room of the residence, which is also attached to the double doors used as an entrance.

7. Within the past 48 hours of application of this search warrant, during an investigation involving [another police detective and affiant], a [confidential informant] was used in making a controlled buy from the residence of [Appellant] at [] N[.] Pittsburgh St[.], front and rear. The [confidential informant] was searched and found to be free of monies and controlled substances. The [confidential informant] was provided with official funds and kept under constant surveillance by [police] officers as he/she arrived at [] N[.] Pittsburgh St[.], front and rear. The [confidential informant] again entered through the eastern glass double doors of the building, facing Decatur Ave[.], and remained inside for a short period of time before exiting those same doors. [Police detectives] kept the [confidential informant] in our view as he/she returned to our meeting location where the [confidential informant] handed over multiple small plastic baggie corners of suspected "CRACK" COCAINE. The [confidential informant] and his/her belongings were again searched and found to be free of all monies and contraband. The [confidential informant] advised [police detectives] that he/she entered the residence and met with [Appellant], and the [confidential informant] handed [Appellant] the money who then retrieved the CRACK COCAINE from a small black box behind the television while in the living room of the residence.

*Id.* at 3-4.

The thrust of Appellant's argument in his *omnibus* motion was that, because the premises was a multi-unit building comprised of two commercial units and two residential units, the averments contained in the affidavit of probable cause failed to set forth sufficient facts to establish probable cause to search each unit (commercial and residential) because the confidential

- 11 -

informant only entered and exited through the double glass doors in the rear of the building. We disagree.

We concur with the trial court, and the record supports, that the affidavit of probable cause identified the property to be searched as "[] N. Pittsburgh St., front and rear" and described the property as consisting of a complex comprised of a two-story building in the "front" affronting North Pittsburgh Street and a one-story building in the "rear" affronting Decatur Avenue. *See* Search Warrant Application, 6/28/19, at Affidavit of Probable Cause ¶4. (describing the premises to be searched as "[] N[.] Pittsburgh St[.], front and rear"). The affidavit of probable cause described the rear portion of the complex as being attached to, and with access to, the front portion of the complex. *Id.* The affidavit of probable cause further stated that Appellant was the occupant of the "residence" located at "[] N[.] Pittsburgh St[.], front and rear."

In the affidavit of probable cause, the affiant stated that he observed the confidential informant enter and exit the building through the "double glass doors," which, according to the affidavit of probable cause, were located in the one-story structure in the rear of the property. The confidential informant informed the affiant that, after handing Appellant the official funds, the confidential informant witnessed Appellant retrieve a small plastic baggie containing what was believed to be a controlled substance from "behind the television while in the living room of the residence." Although the confidential informant does not identify the specific location of the "living room of the

residence," *i.e.* whether it was located in one of the commercial units or in one of the residential units, it is clear from the description of the premises that an individual entering the one-story portion of the structure located in the rear of the property had access to the other units, both commercial and residential, in the structure and that Appellant was the "resident" or had apparent access to the entire property. Therefore, based upon the circumstances of the case *sub judice*, there were sufficient facts set forth in the affidavit of probable cause to establish that controlled substances, and other indicia of drug trafficking, were located in all portions of the building occupied by Appellant.[7] As such, we discern no error in the trial court order

_____

[7] When the application is read as a whole in a common-sense fashion, as is required by the issuing authority, the term "residence" in the case *sub judice* encompasses the entire complex. At the suppression hearing, Appellant presented a "commercial/industrial review document" setting forth information relating to the North Pittsburgh Street property utilized by Fayette County to assess the value of the property for, *inter alia*, tax purposes. **See** Defendant's Exhibit 1. This evidence, however, cannot be relied on by the issuing authority, nor can it be relied on by the trial court in disposing of Appellant's *omnibus* motion for the purpose of assessing whether the issuing authority erred in determining that probable cause existed for the issuance of the search warrant. **See** Trial Court Opinion, 7/11/22, at 3-4. Probable cause must exist within the four corners of the affidavit.

Moreover, the fact that the building was subdivided into two residential units and two commercial units was not in dispute and did not prevent the issuing authority, at the time he or she reviewed the affidavit of probable cause and the application for a search warrant, from viewing the complex as a single unit over which Appellant exercised control for purposes of storing, processing, or packaging controlled substances.

denying Appellant's *omnibus* motion to suppress the physical evidence seized from the "[] N. Pittsburgh St., front and rear" property.

Appellant's second and third issues challenge the trial court's denial of Appellant's request for a new trial based upon discovery violations pursuant to Pennsylvania Rule of Criminal Procedure 573, as well as due process violations pursuant to **Brady**, **supra**, and stemming from the non-disclosure of evidence potentially useful to the defense.[8] Appellant's Brief at 16-22.

_____

[8] We note that, within the context of his second issue, Appellant conflates a request for a mistrial with a motion for a new trial. **See** Appellant's Brief at 16-19 (asking this Court to review the trial court's denial of a "motion for a mistrial" based upon a discovery violation).

Recently, our Supreme Court explained the distinction between a request for a mistrial and a motion for a new trial, in pertinent part, as follows:

> [A] party's request for a mistrial [] is not a request for a new trial. A mistrial is a step removed from a new trial, precluding the inference that a request for a mistrial is a request for a new trial. Often, a mistrial results in an order for a new trial, but that is not categorically true.
>
> . . .
>
> [I]n deciding whether a mistrial is warranted, the [trial] court is not inquiring whether the asserted basis for relief warrants a new trial. Instead, the [trial] court inquires whether the alleged prejudicial event deprived the defendant of a fair trial. Conversely, when ruling upon a motion for a new trial, the [trial] court's inquiry asks specifically whether the asserted basis for relief entitles the movant to a new trial.

**Commonwealth v. Wardlaw**, 249 A.3d 937, 949 (Pa. 2021) (citation omitted).

Typically, we review a trial court's order denying a motion for a new trial under an abuse of discretion standard. ***Commonwealth v. Bell***, 167 A.3d 744, 746 (Pa. Super. 2017), *aff'd*, 211 A.3d 761 (Pa. 2019), *cert. denied*, 140 S.Ct. 934 (2020). In so doing,

> we must review the [trial] court's alleged mistake and determine whether the [trial] court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***Bell***, 167 A.3d at 746 (citation and original brackets omitted); ***see also Commonwealth v. Smith***, 955 A.2d 391, 394 (Pa. Super. 2008) (*en banc*) (stating that, "decisions involving [alleged violations of the rules of] discovery in criminal cases lie within the discretion of the trial court"). When the error involves an alleged ***Brady*** violation, however, such a challenge presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Bagnell***, 235 A.3d 1075, 1084 (Pa. 2020).

Here, Appellant asserts that the Commonwealth violated Rule 573 and his due process rights pursuant to ***Brady***, ***supra***, and its progeny, when it failed to disclose the existence of a search warrant for the six cellular telephones seized on June 28, 2019, as well as the results and supplemental reports concerning "the search" of those cellular telephones. Appellant's Brief at 16-22. Appellant argues that the Commonwealth "highlighted throughout

its case-in-chief that the cellular [tele]phones themselves were indicative of drug trafficking" and, as such, the "fact that no evidence of drug trafficking existed on the [cellular telephones] is exculpatory." *Id.* at 21. Appellant contends that "this information was [withheld] by the Commonwealth" and that he was "prejudiced by the Commonwealth withholding the search warrant for the cellular [tele]phones, the data extracted from the cellular [tele]phones, and the supplemental reports." *Id.* Appellant asserts that a new trial is the only appropriate remedy for the non-disclosure of this evidence because the existence of a search warrant was not disclosed "until near the conclusion of the trial" and the Commonwealth did not provide the results of the search of the cellular telephones to Appellant until nine months after the conclusion of the trial. *Id.* at 19.

> In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution. The [United States] Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty encompasses impeachment evidence as well as directly exculpatory evidence. On the question of materiality, the [United States Supreme] Court [] noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the ***Brady***

strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

*Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001) (citations and quotation marks omitted); *see also Commonwealth v. Brown*, 200 A.3d 986, 994 (Pa. Super. 2018). "Exculpatory evidence favorable to the accused is not confined to evidence that reflects upon the culpability of the defendant. Exculpatory evidence also includes evidence of an impeachment nature that is material to the case against the accused." *Commonwealth v. Kinard*, 95 A.3d 279, 289 (Pa. Super. 2014). "Pursuant to *Brady* and its progeny, the prosecutor has a duty to learn of all evidence that is favorable to the accused which is known by others acting on the government's behalf in the case, including the police. Thus, the Commonwealth's obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution." *Commonwealth v. Santos*, 176 A.3d 877, 883 (Pa. Super. 2017) (citations and original quotation marks omitted), *appeal denied*, 189 A.3d 986 (Pa. 2018).

Pennsylvania Rule of Criminal Procedure 573, in pertinent part, states,

**Rule 573.  Pretrial Discovery and Inspection**

. . .

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory*.  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The

Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1), (D), and (E).  Thus, Rule 573 "requires the disclosure of evidence by the Commonwealth where it is: (1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor."  **Brown**, 200 A.3d at 994 (citation and original quotation marks omitted).

"Pursuant to both **Brady** and Rule 573, the Commonwealth [is] only required to disclose material evidence."  **Commonwealth v. Maldonodo**, 173 A.3d 769, 781 (Pa. Super. 2017), *appeal denied*, 182 A.3d 991 (Pa. 2018).  "[U]nless the omission deprived the defendant of a fair trial, there [is] no constitutional violation requiring that the verdict be set aside[,] and absent a constitutional violation, there [is] no breach of the prosecutor's constitutional duty to disclose."  **Maldonodo**, 173 A.3d at 781.  "A violation of discovery does not automatically entitle [a defendant] to a new trial. Rather, [the defendant] must demonstrate how a more timely disclosure would have affected his[, or her,] trial strategy or how he[, or she,] was otherwise prejudiced by the alleged late disclosure."  **Brown**, 200 A.3d at 986.

Here, in denying Appellant's request for a new trial, the trial court stated,

> The [cellular telephones] were sent to the Allegheny County Crime Lab to extract the contents of the [cellular telephones.  A police detective] testified that drug dealers generally have numerous [cellular telephones] to conduct their drug sales.  Six [cellular telephones] were recovered at the property.  The [police] officers obtained a search warrant for the search of the [cellular telephones] but failed to provide [a copy of the search warrant]

to the Commonwealth or to counsel for the defense. [A police] officer testified that no evidence was retrieved from the [cellular telephones]. He later testified that the content of the [cellular telephones] had no evidentiary value and that their evidentiary value was the large number of [cellular telephones discovered] at the property.

The police failed to provide a copy of the [search] warrant and the reports related to the [cellular telephones] to either the Commonwealth or the defense[,] and[, at trial,] the [police detective] did not have the reports as part of his file. As to a *Brady* violation, the evidence that the crime lab was not able to extract any information from the [cellular telephones] was not exculpatory to the accused, nor was it suppressed by the Commonwealth, as the police had failed to turn it over to the Commonwealth for release. The fact that no information was extracted from the [cellular telephones] was not prejudicial to [Appellant]. The lack of information about the contents of the [cellular telephones] is neither exculpatory [nor] inculpatory evidence. It is not a violation of the mandatory discovery rule.

Trial Court Opinion, 7/29/22, at 4-5 (record citations omitted). Moreover, the trial court explained that "the Commonwealth['s inability] to obtain information from the [cellular telephones] was disclosed at trial and[,] therefore, there was no due process violation." *Id.* at 6. The trial court stated that any prejudice Appellant may have suffered as a result of the Commonwealth's failure to disclose the search warrant and the reports pertaining to the content of the cellular telephones was ameliorated by the trial court's jury instruction "that [the] only evidence that the jury should

consider about the [cellular telephones] was the number of [cellular telephones] in the residence."[9]  *Id.* at 5.

A review of the record demonstrates that, at trial, Detective Garlick[10] testified that, upon execution of a search warrant, six cellular telephones were seized from the North Pittsburgh Street property.  N.T., 1/6/22, at 138.  When asked about the significance of the six cellular telephones, Detective Garlick explained that,

> drug dealers will often communicate with people looking to purchase drugs through the use of cellular [tele]phones particularly text messages and things of that nature.  Drug dealer[s] will often have numerous cellular [tele]phones because it makes it more difficult to extract [information from] them and find any evidence of communication of drug activities.

*Id.*  Detective Garlick stated that the cellular telephones remained in police custody except when in the custody of the Allegheny County Crime Lab where the cellular telephones underwent an extraction process.  *Id.* at 139, 149.  Detective Garlick explained that an extraction process "is an attempt to break into the [cellular telephones] through [use of] the pass code and download the contents [of the cellular telephone.]"  *Id.* at 139.  Detective Garlick further explained that the extraction process could take an extensive period of time

---

[9] We note that the trial court's jury instructions were not transcribed as part of the notes of testimony from Appellant's trial.  N.T., 1/6/22, at 196.

[10] Detective Garlick, who, at the time of trial, was employed by the City of Connellsville Police Department, as well as the Fayette County Bureau of Investigations, was admitted as an expert in the field of drug investigation. N.T., 1/5/22, at 103.

and that, in fact, the extraction process, as of Appellant's trial, had been completed on only five of the six cellular telephones. *Id.* at 139-141. When asked if "any relevant material" had been extracted from the five cellular telephones, Detective Garlick replied in the negative. *Id.* at 139, 141.

On cross-examination, Detective Garlick stated that the cellular telephones were subjected to the extraction process pursuant to a search warrant, which authorized the search of the cellular telephones. *Id.* at 147. Detective Garlick did not have a copy of the search warrant with him at trial to review as part of his testimony because the police "didn't retrieve any evidence from the [cellular telephones.]" *Id.* at 148. Detective Garlick agreed that the standard procedure was to file the search warrant with the local magisterial district judge and to serve a copy of the search warrant on defense counsel. *Id.* Detective Garlick explained his police report did not indicate that the cellular telephones had been sent to a crime lab to undergo the extraction process because "our administrative assistant prepares our reports for us and the [cellular telephones] had no evidentiary value" except "the number of [cellular telephones], the sheer number of them, had evidentiary value." *Id.* at 152. Throughout his cross-examination, Detective Garlick maintained that the failure to mention the search warrant and the subsequent search of the cellular telephones *vis-à-vis* the extraction process in the police report was because no information was able to be extracted from the cellular telephones and there was nothing to report. *Id.* at 153-154.

Upon review of the record, we discern no error of law or abuse of discretion in the trial court's denial of Appellant's request for a new trial based upon the Commonwealth's failure to disclose the search warrant and the forensic reports pertaining to the search of the cellular telephones. The search warrants are not evidence, and the search inventory (produced to Appellant) revealed that six cellular telephones were seized from the North Pittsburgh Street property. The discovery, and subsequent seizure, of six cellular telephones, as documented in the search inventory, was circumstantial evidence that the six cellular telephones were used as part of a drug operation simply because they were recovered from a scene in which other drug paraphernalia, as discussed *infra*, was discovered and drug dealers often used numerous cellular telephones to conduct their illegal sales (a point reiterated numerous times by Detective Garlick during his testimony). Also, reports showing that no information had been extracted from the cellular telephones were neither exculpatory nor inculpatory evidence. Since Appellant maintained at length that no data recovered from the cellular telephones linked him to drug trafficking activity, we concur with the trial court that Appellant failed to demonstrate how he was prejudiced by the non-disclosure of forensic reports relating to the cellular telephones. Put differently, Appellant failed to demonstrate how learning of this information during pre-trial discovery would have altered his trial strategy. As the record demonstrates, defense counsel extensively questioned Detective Garlick on cross-examination about the fact that no information indicating that the

cellular telephones had been used as part of a drug operation was retrieved from the cellular telephones. Lastly, the trial court indicated that it instructed the jury that the "only evidence [] the jury should consider about the [cellular telephones] was the number of [cellular telephones retrieved from] the residence." Trial Court Opinion, 7/29/22, at 5; *see also Commonwealth v. Vucich*, 194 A.3d 1103, 1113 (Pa. Super. 2018) (stating, "[i]t is well[-]settled that the jury is presumed to follow the trial court's instructions" (citation omitted)), *appeal denied*, 199 A.3d 885 (Pa. 2018). Therefore, we find Appellant's issues raising claims of discovery and *Brady* violations to be without merit.

Appellant's fourth and fifth issues challenge the trial court's denial of Appellant's request for a mistrial based upon reference to Appellant's post-arrest silence at trial, and reference to evidence demonstrating Appellant committed an un-charged crime to infer his guilt in the present crimes charged. Appellant's Brief at 23-27.

> The denial of a motion for a mistrial is assessed on appellate review according to an abuse of discretion standard. It is primarily within the trial court's discretion to determine whether defendant was prejudiced by the challenged conduct. On appeal, therefore, this Court determines whether the trial court abused that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

*Commonwealth v. Padilla*, 923 A.2d 1189, 1192 (Pa. Super. 2007) (citations and quotation marks omitted), *appeal denied*, 934 A.2d 1277 (Pa.

2007). "[A] mistrial is an extreme remedy only warranted when the prejudice to the movant cannot be ameliorated to ensure a fair trial. A mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Risoldi*, 238 A.3d 434, 458 (Pa. Super. 2020), *appeal denied*, 244 A.3d 1230 (Pa. 2021).

In his fourth issue, Appellant asserts that the trial court erred in denying his request for a mistrial based upon Detective Garlick's reference to Appellant's post-arrest silence and the Commonwealth's reiteration of Appellant's post-arrest silence as part of its closing argument. Appellant's Brief at 23-25.

Generally, "[t]he admissibility of evidence is a matter for the discretion of the trial court[,] and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." *Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012), *cert. denied*, 569 U.S. 922 (2013). To the extent the question presents as "an issue involving a constitutional right, it is a question of law[ and,] thus, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Baldwin*, 58 A.3d 754, 762 (Pa. 2012).

"Both the United States Constitution and the Pennsylvania Constitution protect every person against being compelled to be a witness against himself

or herself."[11] ***Commonwealth v. Molina***, 33 A.3d 51, 57 (Pa. Super. 2011) (*en banc*), *affirmed*, 104 A.3d 430 (Pa. 2014) (plurality opinion). "[T]he right against self-incrimination prohibits use of a defendant's [] silence as substantive evidence of guilt, unless it falls within an exception such as impeachment of a testifying defendant or fair response to an argument of the defense."[12] ***Molina***, 104 A.3d at 451; ***see also Molina***, 33 A.3d at 62 (stating, "the Commonwealth cannot use a non-testifying defendant's [] silence to support its contention that the defendant is guilty of the crime charged as such use infringes on a defendant's right to be free from self-incrimination"); ***Commonwealth v. DiPietro***, 648 A.2d 777, 782 (Pa. 1994) (stating, "[t]he testimonial reference to [a defendant's] post-arrest silence, the absence of an adequate cautionary instruction, and the further exploitation of [the defendant's] post-arrest silence during closing argument constitute reversible error and mandate a new trial"); ***but cf. Commonwealth v. DiNicola***, 866 A.2d 329, 337 (Pa. 2005) (noting that, "an explicit reference to silence is not reversible error where it occurs in a context

---

[11] The Fifth Amendment of the United States Constitution, in pertinent part, states that, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. Similarly, Article I, Section 9 of the Pennsylvania Constitution, in pertinent part, states that, "[i]n all criminal prosecutions, the accused . . . cannot be compelled to give evidence against himself[.]" Pa. CONST. art. I, § 9.

[12] In the context of an individual's right against self-incrimination, it is without consequence whether a defendant's "silence" occurred "pre or post-arrest, or pre or post-***Miranda*** warnings[.]" ***Molina***, 104 A.3d at 450; ***see also Miranda v. Arizona***, 384 U.S. 436 (1966).

not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt"); **Commonwealth v. Adams**, 104 A.3d 511, 517 (Pa. 2014) (stating that, "the right against self-incrimination is not burdened when the reference to silence is circumspect and does not create an inference of an admission of guilt" (original quotation marks omitted)).

If a defendant's silence is improperly referenced, this Court must then examine whether the improper reference contributed to the verdict or was harmless error, thus negating the necessity of a mistrial. **Commonwealth v. Rivera**, 255 A.3d 497, 506 (Pa. Super. 2021), *appeal granted*, 273 A.3d 510 (Pa. 2022). "[A]n error can be harmless only if an appellate court is convinced beyond a reasonable doubt that the error is harmless." **Molina**, 104 A.3d at 454, *citing* **Commonwealth v. Story**, 383 A.2d 155, 162 (Pa. 1978). An error is harmless when

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Molina**, 104 A.3d at 454, *quoting* **Commonwealth v. Wright**, 961 A.2d 119, 143 (Pa. 2008). Our evaluation of the harmlessness of an improperly admitted reference to a defendant's silence is predicated on the fundamental notion

that a "defendant is entitled to a fair trial but not a perfect one."[13] *Commonwealth v. Noel*, 104 A.3d 1156, 1169 (Pa. 2014) (stating that, "although a perfectly conducted trial is indeed the ideal objective of our judicial process, [a] defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he[, or she,] has been accorded a fair trial" (original brackets and original quotation marks omitted)). Thus, "[i]f a trial error does not deprive [a] defendant of the fundamentals of a fair trial, his[, or her,] conviction will not be reversed." *Id.*

Here, the record demonstrates that the following exchange occurred between Appellant's counsel and Detective Garlick during cross-examination:

| [Defense Counsel:] | Where in the [police] report does it say that you sent the [cellular telephones] to the Allegheny [County] Crime Lab or the extraction lab? |
|---|---|
| [Detective Garlick:] | It's not indicated in [] this copy of the [police] report. Again, our administrative assistant prepares our reports for us and the [cellular telephones] had no evidentiary value so, at least, what was within them had no evidentiary value, but the number of them, the sheer number of them, had evidentiary value. |

---

[13] Typically, the Commonwealth bears the burden of establishing that the error was harmless beyond a reasonable doubt. *Molina*, 104 A.3d at 454. Nonetheless, in the interest of ensuring a fair trial, this Court may undertake a harmless error analysis *sua sponte*. *Commonwealth v. Hamlett*, 234 A.3d 486, 492 (Pa. 2020) (stating that, "the availability of discretionary *sua sponte* review in appropriate cases serves as an exception to the ordinary rule that the government bears the burden of persuasion relative to harmless error").

[Defense Counsel:]   It wouldn't have evidentiary value to [Appellant] if he had access, because there is no evidence of drug dealing in his [cellular telephone], so he is not selling drugs; correct?

[Detective Garlick:]   [Appellant] had the opportunity to express that to us when I questioned him at the Studio.

N.T., 1/6/22, at 152. Thereupon, defense counsel objected and requested a mistrial on the ground, *inter alia*, that Detective Garlick "was not responsive to [the] question and brought up [Appellant's] right to remain silent and that [Appellant] said nothing." **Id.** at 152. The trial court, without explanation and without first hearing from the Commonwealth, denied Appellant's request for a mistrial. **Id.** In its Rule 1925(a) opinion, however, the trial court explained that it denied Appellant's request for a mistrial because "[t]he comment[,] while elicited by the defense, [] is not clear that it references [] Appellant's post-arrest silence." Trial Court Opinion, 7/29/22, at 6-7 (stating that, "[t]he reference was contextual, brief[,] and did not highlight [] Appellant's silence as evidence of guilt"). We disagree.

Detective Garlick, who testified as an expert in the field of drug investigations, indicated throughout his testimony that although the police were unable to extract information from the cellular telephones, indicating that the cellular telephones had been used in drug transactions, the "evidentiary value" of the cellular telephones was inherent in the fact that six cellular telephones had been recovered from the premises during the execution of the search warrant. In other words, the cellular telephones

provided no direct evidence linking Appellant to drug trafficking but, rather, provided circumstantial evidence based upon the number of cellular telephones recovered from the premises. Defense counsel's question emphasized that because no direct evidence was recovered from the cellular telephones linking Appellant to drug trafficking activity, Appellant was not selling drugs. Detective Garlick responded by indicating that Appellant did not deny he was selling drugs when Detective Garlick questioned Appellant at the premises. Thus, Detective Garlick's statement referenced Appellant's right to remain silent when confronted with questions pertaining to his involvement in drug trafficking activities. In other words, Detective Garlick's testimony implied, in the presence of the jury, that Appellant's silence in the face of questioning constituted an admission that he sold drugs. Consequently, we find Detective Garlick's statement - "[Appellant] had the opportunity to express that to us when I questioned him at the Studio" – referenced Appellant's right to remain silent.

Nonetheless, we find that Detective Garlick's statement constituted harmless error because any prejudicial effect of the statement was rendered insignificant by the overwhelming evidence of guilt that was properly admitted and uncontradicted. For example, several of the police officers indicated that Appellant had keys to the property and provided the police officers access to the property. N.T., 1/5/22, at 21, 50, 106. Detective Garlick indicated that paperwork was located during the execution of the search warrant, showing Appellant as the owner of the building. N.T., 1/6/22, at 134. During the

execution of the search warrant, $2,300.00 in United States currency was discovered in a shoebox along with a large bag of cocaine and multiple smaller bags of cocaine. N.T., 1/5/22, at 29-34; **see also** N.T., 1/6/22, at 134. The shoebox also contained several documents bearing Appellant's name, including a traffic citation issued to Appellant, tax documents showing Appellant's ownership of the property, and a prescription bottle bearing Appellant's name. N.T., 1/6/22, at 134. Moreover, drug paraphernalia, including scales, burners, and spoons containing white residue, were located in the kitchen area of the building. N.T., 1/5/22, at 59-63. Detective Thomas Patton ("Detective Patton"), who was admitted as an expert in the field of drug investigation, testified that the evidence seized from the property, including the drug paraphernalia discovered in the kitchen area, the large amounts of currency on-hand, the amount of cocaine, both in large quantities and smaller, broken-down "baggies," indicated, in his opinion given to a reasonable degree of certainty, that the property was used by drug dealers for the purpose of packaging controlled substances, namely cocaine and crack cocaine, for the purpose of distribution. *Id.* at 54-68.

Accordingly, we conclude that the admission of Detective Garlick's testimony pertaining to Appellant's silence, which was offered as substantive

evidence of guilt, constituted a harmless error in light of the otherwise overwhelming evidence of Appellant's guilt.[14]

In his fifth issue, Appellant contends the trial court erred in denying his request for a mistrial based on the Commonwealth's presentation of testimony

_____

[14] Appellant asserts that Detective Garlick's reference to Appellant's post-arrest silence was exploited by the Commonwealth in its closing argument. Appellant's Brief at 23. A review of the record demonstrates the following statement by the Commonwealth during its closing argument:

> Those are the three charges, ladies and gentlemen. [Defense counsel] wants to go on about the [cellular telephones]. I could have easily not brought the [cellular telephones] here today and show[n] you them at all. We brought them to show you, because they were part of the search. We don't get to write the script for the facts of the case. If I [did], I am sure that I would have [written a] script that we [] found great evidence on the [cellular telephones], we didn't. That is why you didn't hear anything. I still showed you the [cellular telephones] because it was part of the execution of the search warrant. I am not hiding anything from you.

> Exhibit [Number] 7 shows that [cellular telephones], those six [cellular telephones] were inventoried immediately after the search and that inventory was immediately filed and provided to [defense counsel] and at no point was any request made to look at the [cellular telephones] by [defense counsel].

N.T., 1/6/22, at 195. Defense counsel objected to the Commonwealth's statement on the ground Appellant had no burden in this case. *Id.* The trial court sustained the objection and offered a cautionary instruction, stating, "[Appellant] has no burden."

Aside from the trial court's cautionary instruction correcting the Commonwealth's improper statement pertaining to Appellant having a burden of proof as to his innocence in the instant criminal matter, we find no specific reference, as Appellant contends, by the Commonwealth exploiting Detective Garlick's testimony regarding Appellant's post-arrest silence.

that Appellant was guilty of the aforementioned criminal charges since he committed an uncharged crime. Appellant's Brief at 26-27. Specifically, Appellant asserts that Detective Patton improperly testified that he was assisting Detective Garlick "in a drug investigation into illegal narcotics [sales at] the [North Pittsburgh Street property]." *Id.* at 26. Appellant argues that Detective Patton's testimony "was irrelevant because the Commonwealth did not charge [Appellant] with the controlled purchases [by a confidential informant of a controlled substance] utilized to obtain the search the warrant." *Id.* at 27.

To reiterate, the admissibility of evidence is within the sound discretion of the trial court and will only be reversed for an abuse of that discretion. *Johnson*, 42 A.3d at 1027.

> Evidence of one crime is generally inadmissible against a defendant being tried for another crime. While generally not admissible to prove bad character or criminal propensity, evidence of crimes, wrongs, or other acts is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect. Permissible purposes to admit other bad acts evidence include motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, subject to the [trial] court's weighing of the probative value and the potential for unfair prejudice against the defendant.

*Commonwealth v. Crispell*, 193 A.3d 919, 936 (Pa. 2018) (citations, quotation marks and original brackets omitted), *relying on* Pa.R.E. 404(b)(2). "In addition, evidence of crimes, wrongs, or other bad acts may be admissible as *res gestae* when relevant to furnish the complete story or context of events

surrounding the crime." **Crispell**, 193 A.3d at 936 (original quotation marks omitted); **see also Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988) (stating that, the *res gestae* exception, also known as the "complete story rationale," permits evidence of other criminal acts to be admitted "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place").

In denying Appellant's request for a mistrial, the trial court explained,

[Detective Patton] made no mention of [] Appellant being under investigation or being [specifically] involved in [the] investigation. [Detective Patton's] testimony was offered to denote the extent and focus of the task force's investigation that day. The testimony related to a location at which more than one person was residing. In his testimony, there was no implication that [] Appellant was the target of the investigation or even under investigation. There was no statement that would have prejudiced [] Appellant or interfered with his ability to obtain a fair trial.

Trial Court Opinion, 7/29/22, at 7.

A review of the record demonstrates the following exchange between the Commonwealth and Detective Patton during direct examination:

[Commonwealth:]    All right.  Detective Patton were you working on a particular task on June 28, 2019?

[Detective Patton:]    Yes, ma'am.

[Commonwealth:]    Can you tell the jury **some background about that task and what you were doing**?

[Detective Patton:]    I was assisting the lead investigator, Detective Garlick, in a drug investigation into illegal narcotics being sold out of what

> we called ["]The Studio[" (located along
> North Pittsburgh Street).]

N.T., 1/5/22, at 45 (emphasis added). Thereafter, defense counsel objected and requested a mistrial on the ground, *inter alia*, that Appellant was "not charged with selling [illegal narcotics] from the building[.]" ***Id.*** at 46.

Examining Detective Patton's statement within the context of his testimony as a whole, we concur with the trial court that Detective Patton did not reference Appellant or Appellant's involvement in selling illegal narcotics from the premises. While the testimony references an investigation of a crime, *i.e.* the selling of illegal narcotics, this other crime was not associated with Appellant to show his bad character and his propensity for committing criminal acts nor was the potential other crime directly associated with Appellant. Rather, as the trial court notes, this statement merely references the activity and location of the drug task force on that date and explains Detective Patton's involvement in the investigation in order to put his subsequent testimony into context as he discussed the events on June 28, 2019. In other words, this statement merely "complete[s] the story of the crime on trial by proving its immediate context of happenings near in time and place" and explains how the individual who is about to offer testimony on the events became involved in the investigation. As such, we discern no abuse of discretion by the trial court in permitting the testimony and denying Appellant's request for a mistrial.

For the reasons set forth herein, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023